489 F.2d 1087
 Francis X. BECKER, individually and on behalf of all other
taxpayers of the Village of Lynbrook similarly situated, and
on behalf of all other taxpayers residing in the
incorporated villages of the State of New York similarly
situated, et al., Plaintiffs-Appellants,
v.
Arthur LEVITT, as Comptroller of the State of New York, and
Norman F. Gallman, as Commissioner of Taxation &
Finance of the State of New York,
Defendants-Appellees.
 No. 40, Docket 72-2331.
 United States Court of Appeals, Second Circuit.
 Argued Oct. 19, 1973.
Decided Dec. 21, 1973.
 
 Jay F. Korth, Lynbrook, New York, for plaintiffs-appellants.
 Brenda Soloff, Asst. Atty. Gen., New York City (Samuel A. Hirshowitz, First Asst. Atty. Gen., and Louis J. Lefkowitz, Atty. Gen., of N.Y., New York City, on the brief), for defendants-appellees.
 Before MEDINA, LUMBARD and TIMBERS, Circuit Judges.
 MEDINA, Circuit Judge:
 
 
 1
 As demands for additional services and the effects of inflation made themselves felt, the State of New York embarked upon a comprehensive program of revenue sharing with the cities, towns, villages and counties of the State of New Yrok. In 1970 the State Legislature made substantial changes in this program for the purpose of giving further aid to these political subdivisions of the state. Supplementing the basic amounts made payable to each county, town, village and city as provided in Section 54, paragraphs (a), (b), and (c), two new paragraphs of Section 54 provided for the payment of further specific payments to each county, town, village and city and an 'Additional city apportionment' in the amount of 9% of the total state personal income tax collections during the prior fiscal year This amount is by Section 54(2)(e) of the State Finance Law, McKinney's Consol.Laws, c. 56, made payable 'to such cities on the basis of the percentage that the total population of each city bears to the total population of all cities in the state.' It is this Section 54(2)(e), as well as Sections 54(2)(a) and (d), that is under attack in this case as failing to provide the villages of the State, including Lynbrook and their officials and taxpayers the equal protection of the laws required by the Fourteenth Amendment.
 
 
 2
 The defendants, Arthur Levitt as Comptroller and Norman F. Gallman as Commissioner of Taxation & Finance of the State of New York, moved to dismiss the complaint for lack of subject matter jurisdiction in the federal courts and for failure to state a claim for relief that is discussed in the briefs in terms of lack of standing to maintain the action. Judge Travia, after considering the briefs submitted by the parties and hearing extended oral argument, made an order denying appellants' application for the appointment of a three-judge court and he dismissed the complaint. There is no opinion below and the dismissal was apparently both because of a lack of standing by appellants to maintain the action and because it was manifest on the face of the complaint that the case did not present for adjudication any substantial federal question sufficient to form a basis for subject matter jurisdiction. The plaintiffs appeal from this order. We do not reach the question of standing as we find the complaint fails to present any substantial federal question and it is thus clear that the court below lacked subject matter jurisdiction.
 
 
 3
 The substance of the claim asserted by the Village of Lynbrook and its taxpayers and local officials is that they have no objection to the general distribution of state revenues to the counties, towns, villages, and cities in Section 54 except as it provides for additional city apportionment in Sections 54(2)(a), (d), and (e). Appellants characterize this legislation as not only unfair, unjust and discriminatory but 'a blatant exaltation of form over substance,' confiscatory and 'absolutely arbitrary and capricious,' because thirty-two of the cities are smaller than the Village of Lynbrook, and because as is alleged the Village of Lynbrook furnishes greater services 'quantitatively and qualitatively' than do 'most of the cities.' It is further alleged in the complaint that appellants have found that the small City of Sherrill with a population of 2986 received in the fiscal year 1972 total state aid in the sum of $97,987, whereas the Village of Lynbrook, with seven times its population received only $120,882.
 
 
 4
 Nevertheless, we find no substantial federal question in the case for the simple reason that there is a reasonable relation between the statutory scheme, including the challenged provisions for additional aid to the cities, and the avowed purpose of assisting all the local governments, including the cities, which 'continue to need special aid to help meet the particular responsibilities assigned to them by statute.' 1970 Legislative Annual, at 202.
 
 
 5
 * Very few facets of modern life in America are as perplexing to the average citizen as the maze of overlapping political subdivisions of the establishment by which the states are governed. This is peculiarly true of the State of New York. There are counties and towns, there are villages some of which are incorporated and some of which are not. There are also cities, large and small. The problems these political subdivisions of the State are called upon to solve are legion. There are uplands and wetlands, beaches and estuaries, and an endless number of lakes and rivers, large ans small. Highways must be repaired and maintained. Transportation difficulties vary from one locality to another. Schools and libraries must be built, maintained and staffed. Provision must often be made for ambulance and hospital service in varying degrees. In some cities and in some villages civic minded citizens form Beautification Committees and these Committees are busy recommending three planting programs, parking lot facilities and the removal of unsightly public utility poles, rotting trees and sometimes dilapidated vacant and unoccupied buildings and shacks in which narcotics operators and addicts, as well as vandals and other undesirables gather to bedevil the community. There are often sewage problems of the most serious character. The necessity for regulation of pollution and water supplies is far from a mere speck on the horizon. All these matters, together with the burden of welfare costs, are regulated by a bewildering congeries of laws which are constantly being passed not only by the State Legislature but by duly authorized legislative or quasi-legislative bodies in the cities, counties, towns and villages. And the demand for and the furnishing of this multiplicity of services is in a continual state of flux due to rapid and often dramatic shifts in population from one place to another.
 
 
 6
 The cities, even though some are smaller in population than the villages, have more extensive powers and duties than the villages. Compare General City Law, McKinney's Consol.Laws, c. 21, Section 20 with Village Law, McKinney's Consol.Laws, c. 64, Section 89. The laws of New York are characterized by the distinctions often drawn between the cities and the villages which reflect the greater needs of the cities, regardless of their size. Cities can bear a greater burden of the welfare costs since cities are expected to participate in the funding of county-wide public welfare districts. The villages do not have similar responsibilities. Social Services Law, McKinney's Consol.Laws, c. 55, Section 69. Villages are able to contract for police and fire protection, whereas cities cannot do so. See General City Law Section 20, subdivisions 12, 13 and Village Law Section 89, subdivisions 24, 24-a.
 
 
 7
 To describe the whole spectrum of duties and responsibilities of the cities, counties, towns and villages of the State of New York, and to catalogue the services now being rendered by each of them to the public, together with the new and expanding services not yet being performed in given cases, but clearly contemplated by the nexus of general and local laws of one kind or another, is a task we are wholly unequipped to undertake. But the members of the Legislature of the State of New York have this intimate knowledge of local conditions and in the exercise of their special expertise in such matters they have evolved the whole complicated and comprehensive statutory plan of revenue sharing, of which Sections 54(2)(a), (d), and (e) are but a very small part. We cannot doubt that such revenue sharing is a legitimate function of the Legislature.
 
 
 8
 Such is the propensity of human beings to believe they are being discriminated against that it is fair to say that the ingenuity of man is unequal to the task of devising a scheme of revenue sharing that will please everybody.
 
 
 9
 Section 54 must be considered in its entirety. When this is done, we think it is demonstrable that the legislation, and especially the amendments of 1970 that are under attack in this case, bears some rational relationship to a legitimate state purpose.
 
 
 10
 We find that the inclusion of Sections 54(2)(a), (d), and (e) is neither arbitrary nor capricious, nor does it appear to us to be unreasonable or in any manner confiscatory.
 
 II
 
 11
 In order to determine whether or not a three-judge court should be convened we must study the relevant decisional law. If we find there is some validity to the claim, a three-judge court must decide the constitutional questions involved in the case. City of New York v. Richardson, 473 F.2d 923 (2d Cir.), cert. denied, sub nom. Lavine v. Lindsay, 412 U.S. 950, 93 S.Ct. 3012, 37 L.Ed.2d 1002 (1973). On the other hand, if it appears on examination of the cases that the claim is 'essentially frivolous,' 'wholly unsubstantial' or 'obviously frivolous,' we have no alternative other than to deny the application for a three-judge court and dismiss the case for lack of jurisdiction. Goosby v. Osser, 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973); California Water Service Co. v. City of Redding, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323 (1938).
 
 
 12
 As will appear in the ensuing discussion, there is absolutely nothing of any legal substance in any of the claims of appellants that the Village of Lynbrook or its officials or taxpayers have, by virtue of Sections 54(2)(a), (d), and (e) of the State Finance Law of New York, been denied the equal protection of the laws guaranteed by the Fourteenth Amendment.
 
 
 13
 To begin with, the courts have always been extremely reluctant to interfere with the taxing and spending powers of the legislatures of the states. Allied Stores of Ohio v. Bowers, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959); Madden v. Kentucky, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590 (1940); Carmichael v. Southern Coal and Coke Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245 (1937); State Board of Tax Commissioners of Indiana v. Jackson, 283 U.S. 527, 51 S.Ct. 540, 75 L.Ed. 1248 (1931); Dane v. Jackson, 256 U.S. 589, 41 S.Ct. 566, 65 L.Ed. 1107 (1921). The traditional equal protection test requires no more than a showing of some rational connection between the statute under attack and a legitimate state purpose. When the circumstances of a particular case compel such a finding, the presumption of constitutionality prevails. Sna Antonio Independent School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).
 
 
 14
 It is true that the presumption of constitutionality disappears and the courts apply a stricter test and conduct a searching judicial scrutiny where the state statute under attack creates a 'suspect' classification or impinges upon constitutionally protected rights. For example, classifications based upon race, national origin, alienage, indigency or illegitimacy are inherently 'suspect.' Oyama v. California, 332 U.S. 633, 68 S.Ct. 269, 92 L.Ed. 249 (1948); Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 353,27 L.Ed.2d 264 (1971); Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Gomez v. Perez, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973). But it is clear to us that nothing in New York's comprehensive revenue sharing laws, including the 1970 amendments, calls for the application of this 'stricter rule.' Nor do appellants make any such contention.
 
 
 15
 Affirmed.
 
 LUMBARD, Circuit Judge (concurring):
 
 16
 I agree with Judge Medina that the district court's dismissal of the complaint must be affirmed, but I wish to state separately my reasons for so agreeing.
 
 
 17
 Appellants challenge the constitutionality of the New York State Finance Law 54(2)(a), (d), (e) (McKinney Supp.1973), which grant more state aid proportionately for cities than for villages.[1] Appellants claim that this favoring of cities over villages denies villages and their taxpayers the equal protection of the laws. Seeking to enjoin appellees, the Comptroller and the Commissioner of Taxation and Finance of the State of New York, from distributing any funds under the challenged sections, appellants asked that a threejudge court pursuant to 28 U.S.C. 2281 be convened. The district court, however, dismissed the complaint.
 
 
 18
 Under 2281 we must remand this case with orders to convene a threejudge court unless we find that prior decisions of the Supreme Court have rendered appellants' claim frivolous. See, e.g., Goosby v. Osser, 409 U.S. 512, 518, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973). Although no Supreme Court case that deals with a similar challenge to a state revenue-sharing measure has been cited to us, analogous decisions of the Court have clearly foreclosed serious consideration of the complaint in this case.
 
 
 19
 Last term in San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), the Court upheld the method by which Texas financed its public schools. The decision makes it clear that only a rational relation between the statutory purpose and the classification employed is necessary to sustain a state finance law.[2] Appellants concede, as they must, that there is a justification for giving proportionately more aid to large cities, like New York and Buffalo, than to villages like Lynbrook.[3] Their complaint is that not all cities need this larger amount of aid and that the classification between cities and villages is needlessly imprecise in determining which political subdivisions need the most financial help.
 
 
 20
 When stated this way, the claim must fail. It is old learning that under the rational relation standard of judicial review, classifications need not be mathematically precise. Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 31 S.Ct. 337, 55 L.Ed. 369 (1911). This principle has been recently reaffirmed in cases analogous to this one. State welfare schemes have been upheld even though the classifications employed were imprecise. See Jefferson v. Hackney, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972); Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Similarly, classifications in taxation laws have been sustained although the classifications were not perfectly related to the statutory purpose. See Lehnhausen v. Lake Share Auto Parts Co., 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973); Allied Stores of Ohio, Inc. v. Bowers, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959).
 
 
 21
 Judge Medina notes that all cities, big or small, have statutory duties not imposed on villages. Appellants claim that New York could more precisely determine the needs and duties of its subdivisions in granting state aid, but under the rational relation standard the state need not employ the most precise classifications imaginable. See San Antonio Independent School District v. Rodriguez, supra, 411 U.S. at 51, 93 S.Ct. 1278. All that is necessary is that a conceivable basis can be perceived for granting more aid to cities than to villages, see McGowan v. Maryland, 366 U.S. 420, 425-426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), and that basis has been conceded here.[4]
 
 
 22
 Accordingly, I concur in affirming the order of the district court.
 
 TIMBERS, Circuit Judge:
 
 23
 I concur in Judge Medina's opinion and also in Judge Lumbard's concurring opinion.
 
 
 
 [1]
 Appellants' complaint challenged sections 54(2)(a), (f), (g), as these sections were numbered by chapter 142 of New York Laws of 1970. A 1973 amendment to the State Finance Law changed the section numbers of the challenged portions of the Law but did not otherwise change them
 
 
 [2]
 Of course a compelling state interest would be required if the statute employed a suspect classification or affected a fundamental interest. This is not the case here
 
 
 [3]
 This distinguishes City of New York v. Richardson, 473 F.2d 923 (2d Cir. 1973), in which we ordered that that the claim be heard before a three-judge court. There the State of New York offered no justification for laws which required the City of New York pay a proportionately higher percent age of the state's welfare costs than its percentage of the total state population and no justification was apparent to us. 473 F.2d at 931-932
 
 
 [4]
 Like Judge Medina, I do not reach the issue of whether the individual taxpayers have standing to raise the claim at issue here. It is clear that the Village of Lynbrook does not have standing. Williams v. Mayor & City Council of Baltimore, 289 U.S. 36, 53 S.Ct. 431, 77 L.Ed. 1015 (1933); City of New York v. Richardson, 473 F.2d 923, 929 (2d Cir. 1973). The question of village taxpayers' standing to challenge a state finance law is, however, more difficult, and here, as in Curran v. Lee, 484 F.2d 1348 (2d Cir., Oct. 3, 1973), it is more appropriate to decide the substantive issue instead of the standing issue